IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OCTAVIO GOMEZ-PEREZ,

        Petitioner,                  No. CIV S-09-2093 MCE CHS P

    vs.

MIKE MCDONALD, et al.,

        Respondents.      __FINDINGS AND RECOMMENDATIONS__

_____/

## I.  INTRODUCTION

Petitioner Gomez-Perez, a state prisoner, proceeds pro se with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. §2254.  Petitioner was convicted in the Placer County Superior Court, case number 622044017, of various offenses arising out of auto thefts and a home invasion, for which he was sentenced to an aggregate term of 62 years to life.

## II.  BACKGROUND[1]

In the early morning of June 4, 2004, 68 year old Cesario Pinon awoke to the sounds of people walking and making noises in his house at 7429 Apple Hollow Loop in

---

[1] This and other background summaries, where designated, were taken from the unpublished opinion of the California Court of Appeal, Third District, on direct appeal of petitioner's criminal conviction, with modifications and additions as appropriate.  _See People v. Gomez Perez et al._, No. C056219, slip op. at 1-5 (Ca. Ct. of App. 3rd Dist. Mar. 30, 2009).

Roseville.  He woke up his live-in partner Sarah Jedrzynski.  A few minutes later, three strangers, with faces covered, entered the bedroom.  One of the men, speaking in both Spanish and English, ordered Pinon and Jedrzynski to lie face down on their bed, to keep still, and to tell them where their money was.  The intruders tied the couple at the wrists and ankles with electrical cord and duct tape, and proceeded to ransack their home.  Pinon initially denied having any money, but after one of the men struck him multiple times on the left shoulder with a flat object, he gave the men the combination to their lockboxes.  Pinon managed to work his hands somewhat free, but one of the men returned and retightened his bindings.

When Pinon no longer heard any noises, he climbed out of bed with his hands and ankles still bound.  He noticed that the room was full of smoke and there were flames in the closet.  As he hopped around the end of the bed, trying to locate Jedryzynski, Pinon tripped, fell, and lost consciousness.  Jedrzynski managed to untie her hands, pushed herself through a window and ran to a neighbor's house, who then called 911.

Police officers and firefighters rescued Pinon from the burning bedroom and extinguished the fire.  Pinon was taken to the hospital where he was treated for smoke inhalation and a high level of carbon monoxide.

Firefighters discovered that telephone cords had been cut, several small fires throughout the house had been intentionally set, and the range knobs on the gas stove were turned to the "on" position.

The couple's 2004 Buick LeSabre was missing from their garage.  Parked down the street from the home was a 1994 Mercury Grand Marquis with no license plates, which had been stolen that morning from Daniel Dillon.

Also that day, a 1992 Nissan Sentra SER owned by Nathanael Merrill was stolen from in front of his house.  Inside the Sentra were various items of personal property, including a Bible, circular saw and various construction tools.

/////

On June 3, 2004, someone also broke into a Ford pickup truck - a company vehicle assigned to Jody Leach– stealing a laptop computer, cell phone and camera.

Police activated the OnStar GPS system of the Buick LeSabre stolen from Pinon and Jedrzynski's garage and located the vehicle in a carport at Edison and Bell in Sacramento. Inside the LeSabre, police discovered Jedrzynski's purse, Pinon's driver's license, a piece of the radio from the stolen Nissan Sentra, and some of the items stolen from Merrill and Leach.

On June 5, 2004, shortly after midnight, two Sacramento County Sheriff's deputies pulled over a blue Pontiac Sunbird with a missing rear window, peeled steering column, and expired registration tags. Petitioner was driving; his passenger was Jose Humberto Magana-Torres. A search of the Sunbird yielded the Bible belonging to Merrill and keys to stolen the Buick LeSabre. There was also a cell phone displaying the name of "Heiner" plugged into the car charger.

At petitioner's apartment, officers discovered multiple items that had been stolen from the Pinon-Jedrzynski home and from the auto theft victims. Magana-Torres's fingerprints were found on Merrill's stolen Nissan Sentra, on Dillon's stolen Grand Marquis, and on Pinon's driver's license. A third person's prints, those of Heiner Villeda, were found on the Sentra and on the LeSabre.

After waiving their constitutional rights, petitioner and Magana-Torres were interviewed separately by Roseville Police Department Detective Calvin Walstad, with the assistance of a Spanish translator. When shown a photograph of Villeda, Magana-Torres stated, "He is Heiner. He's the person who did everything." When petitioner was shown the same photograph, petitioner stated, "He is Heiner" and "he is the one who told me to do everything." Petitioner also said that $1,500, a computer, telephone, jewelry, and digital camera were taken from the victims' house on Apple Hollow Loop. He denied hitting anyone but said he saw Villeda hit the male victim three times with a file from a knife block in the house. Walstad then traveled to Pinon's house. In the bedroom, he discovered a sharpening steel from a knife block

1  in the kitchen.  The handle of the sharpening steel had been broken in half.

2          In a joint trial, petitioner and Magana-Torres were convicted of three counts of

3  auto theft, conspiracy to commit robbery, residential burglary, two counts of home invasion

4  robbery in concert, theft from an elder, false imprisonment, false imprisonment of an elder,

5  assault with a deadly weapon, two counts of conspiracy to commit murder, two counts of

6  attempted premeditated murder, arson causing great bodily injury, causing injury to an elder, and

7  three counts of receiving stolen property, with true findings on several great bodily injury

8  enhancements.  The trial court sentenced each defendant to an aggregate total of 62 years to life

9  in state prison.  Villeda, the third offender, was charged with the present crimes along with

10  petitioner and Magana-Torres, but pleaded guilty to several of the counts prior to commencement

11  of trial.

12          Petitioner and Magana-Torres appealed their convictions to the California Court

13  of Appeal, Third District, alleging the same constitutional, evidentiary, instructional, and

14  sentencing errors presented here.  The state appellate court found no reversible error and affirmed

15  the judgments. The California Supreme Court denied review.  Although petitioner and Magana-

16  Torres were tried together and filed their direct appeal in state court together, the pending federal

17  petition concerns only the constitutionality of petitioner Gomez-Perez's convictions and

18  sentence.

19                              III.  CLAIMS

20          The petition presents five distinct grounds for relief; each will be separately set

21  forth and discussed herein.  Petitioner claims:

22      (A)   The trial court's evidentiary rulings deprived him of his Sixth Amendment rights;

23      (B)   The trial court erroneously gave a standard flight instruction (CALCRIM No.

24            372);

25      (C)   The trial court failed to adequately clarify instructions on premeditation and

26            deliberation following a question from the jury;

4

1    (D)    Imposition of the upper term on Count 5 violated the rule of *Cunningham v.*

2           *California*, 549 U.S. 270 (2007); and

3    (E)    The court erroneously declined to stay the two terms imposed for robbery in

4           Counts 5 and 6.

5           For the reasons that follow, it is recommended that each of petitioner's claims be

6    denied.

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

8           An application for writ of habeas corpus by a person in custody under judgment of

9    a state court can be granted only for violations of the Constitution or laws of the United States.

10   28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

11   *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

12   This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

13   the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

14   U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

15   AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

16   state court proceedings unless the state court's adjudication of the claim:

17          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
18          determined by the Supreme Court of the United States; or

19          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
20          State court proceeding.

21   28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

22   *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

23   This court looks to the last reasoned state court decision in determining whether the law applied

24   to a particular claim by the state courts was contrary to the law set forth in the cases of the United

25   States Supreme Court or whether an unreasonable application of such law has occurred.  *Avila v.*

26   *Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

V.  DISCUSSION

A.      Evidentiary Admissions

For his first claim, petitioner contends that the trial court took judicial notice of Villeda's guilty plea, and further admitted Detective Walstad's testimony as to a redacted statement made by Magana-Torres, although petitioner had no opportunity to cross-examine Villeda or Magana-Torres, thus depriving him of his right to confrontation under the Sixth Amendment.

1.      Villeda's Plea

a.  Additional Background[2]

Outside the jury's presence, the prosecution called former co-defendant Villeda to testify about the events of June 3 and June 4, 2004.  Despite a grant of immunity and the court's warning that he would be held in contempt if he refused to answer the prosecutor's questions, Villeda refused to testify, invoking his Fifth Amendment privilege against self-incrimination.

Subsequently, the prosecutor requested that the court to take judicial notice of Villeda's guilty plea to several of the counts with which defendants were charged.  Defendants objected that the plea was inadmissible hearsay and violated their confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004).

The trial court took judicial notice of Villeda's guilty plea but ruled that, because the plea was too long to read to the jury, it would be summarized in a separate document.  Ultimately the judicial notice summary submitted to the jury recited simply that on June 7, 2006, in case No. 62-044017, Villeda entered pleas of guilty to the theft of Dillon's Mercury Grand Marquis, Merrill's Nissan Sentra, home invasion robbery in concert against Pinon with infliction of great bodily injury, home invasion robbery in concert against Jedrzynski, false imprisonment of an elder, attempted premeditated murder of Pinon, and theft of the Buick LeSabre belonging to

_____

[2] *See People v. Gomez Perez et al.*, *supra*, slip op. at 5-6.

1   Pinon and Jrdrzynski.  (Clerk's Transcript ("CT") at 978-79.)

2          In closing argument, the prosecutor suggested that Villeda's plea, considered

3   along with other evidence, tended to show that he participated in the home invasion robbery

4   along with the two defendants who were on trial.

5          b.  Analysis

6          Petitioner contends that admission of information regarding Villeda's plea

7   violated his right to confrontation under *Crawford v. Washington*, because the summary of the

8   plea was testimonial and he was unable to cross-examine Villeda about his reasons for pleading

9   guilty.  Petitioner further argues that admission of the plea removed an element of the conspiracy

10  charges from the jury's determination; namely, whether a member of the conspiracy committed

11  the target crimes and the crimes as natural and probable consequences of the conspiracy.

12         The Confrontation Clause of the Sixth Amendment, made applicable to the states

13  through the Due Process Clause of the Fourteenth Amendment, requires that a criminal defendant

14  be afforded the right to confront and cross examine witnesses against him.  *See Pointer v. Texas*,

15  380 U.S. 400, 403 (1965).  In *Crawford v. Washington*, the United States Supreme Court held

16  that the Sixth Amendment is  violated when testimonial hearsay evidence is admitted under

17  circumstances where the criminal defendant had no opportunity to conduct a cross examination.

18  541 U.S. 36, 68 (2004).  While the *Crawford* Court specifically left "for another day any effort to

19  spell out a comprehensive definition of 'testimonial,'" it gave examples: "Whatever else the term

20  covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury,

21  or at a former trial; and to police interrogations."  *Id.*

22         Subsequently, the Supreme Court held that the core class of testimonial statements

23  covered by the Confrontation Clause includes affidavits or declarations, made under

24  circumstances which would lead an objective witness reasonably to believe that the statement

25  would be available for use at a later trial, because such affidavits are "functionally identical to

26  live, in-court testimony, doing 'precisely what a witness does on direct examination.'"

7

*Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2532 (2009) (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006).  On the other hand, "it is undisputed that public records, such as judgments, are not themselves testimonial in nature and that these records do not fall within the prohibition established by the Supreme Court in *Crawford*."  *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005) (finding non-testimonial various public records including fingerprints, a photograph, and records of conviction); *Melendez-Diaz*, 129 S. Ct. at 2538 ("Documents kept in the regular course of business [are non-testimonial] and may ordinarily be admitted at trial despite their hearsay status.").

At least one United States Court of Appeals has proceeded on the assumption that guilty pleas are testimonial. *United States v. Banks*, 464 F.3d 184, 189 (2nd Cir. 2006) ("assuming without deciding" that the "pleas, allocutions, and post-arrest statement" were "testimonial statements"), *cert. denied*, 552 U.S. 935 (2007); *see also United States v. Gotti*, 459 F.3d 296, 343 (2nd Cir. 2006) (holding that the admission of guilty pleas by co-defendants on the counts charged against petitioner violated *Crawford*, though it was a harmless error), *cert. denied*, 551 U.S. 1144 (2007).

Here, it is not necessary to decide whether the information regarding Villeda's guilty pleas was testimonial within the meaning of *Crawford*.  Claims under the Confrontation Clause are subject to harmless error analysis.  *See, e.g., Lilly v. Virginia*, 527 U.S. 116, 139-40 (1999) (plurality opinion); *United States v. Bowman*, 215 F.3d 951, 961-62 (9th Cir. 2000) (holding that Confrontation Clause violation, if any, was harmless beyond a reasonable doubt, as other evidence sufficiently linked defendant to the charged conspiracy).

On direct appeal, the California Court of Appeal, Third District, found that admission of Villeda's plea information did not amount to prejudicial error.  In order to reach the prejudice inquiry, the state court of appeal assumed for purposes of its opinion, without expressly deciding, that the trial court had erred in admitting Villeda's guilty plea.  *See People v. Gomez Perez et al.*, *supra*, slip op. at 8-9.  The state court held:

1
2
3
4
5
6
7

Nothing in Villeda's guilty plea pointed the finger of guilt at either co-defendant. The plea simply confirmed his participation in the home invasion robbery of Pinon and Jedrzynski. However, his involvement was amply shown by other significant evidence. Pinon testified that there were *three* intruders. Villeda's fingerprints were found on both the Nissan Sentra and the Buick LeSabre. Both defendants were apprehended only hours after the robbery, in a car with a cell phone plugged into the charger, displaying the name "Heiner." Both defendants told Detective Walstad that "Heiner" [Villeda] was the mastermind and primary perpetrator of the robbery. Thus, the guilty plea did not materially add to the prosecution's case.

8
9
10
11

In addition, there was compelling evidence connecting both defendants to the home invasion robbery at Apple Hollow Loop. Magana-Torres's fingerprints were found on items of personal property stolen from the victims' house, including Pinon's driver's license. Magana-Torres's statement that Villeda "did everything" constituted an implied admission that he was inside the home and participated in the robbery.

12
13
14
15
16
17

While none of Gomez-Perez's fingerprints was found on stolen property, the evidence of his guilt was stronger. Tools stolen from Merrill's Nissan Sentra and personal items stolen from the victims' home were found in his apartment. Gomez-Perez told Detective Walstad that Villeda "told *me* to do everything," thus admitting that he actively participated in the robbery. Finally, Gomez-Perez stated that Villeda had hit the male victim with "a file" that was taken from a knife block, information that was corroborated by Walstad's discovery of a sharpening steel with a broken handle in the bedroom. Only someone present at the crime scene could have had access to this type of knowledge.

18
19

We find beyond a reasonable doubt that the jury would have convicted both defendants of the home invasion robbery even had Villeda's guilty plea not been introduced. (See *United States v. McClain, supra,* 377 F.3d at pp. 222-223.)

20

*People v. Gomez Perez et al., supra*, slip op. at 9-10 (alteration in original).

21        Indeed, on direct review, *Crawford* error is reviewed for harmless error using a

22   standard under which "the court must be able to declare a belief that it was harmless beyond a

23   reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also United States v.*

24   *Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004). The Supreme Court has adopted a less strict standard

25   for federal habeas corpus. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993). A habeas corpus

26   petitioner is not entitled to relief unless the trial error "had substantial and injurious effect or

1   influence in determining the jury's verdict." *Id*. at 637 (internal quotation omitted).

2           In order to grant habeas corpus relief in a case such as this one, where a state court

3   has determined that a constitutional error was harmless, a reviewing court must determine both

4   that: (1) the state court's decision was "contrary to" or an "unreasonable application" of federal

5   law with respect to harmless error, and (2) the petitioner suffered prejudice under *Brecht v.*

6   *Abrahamson* (507 U.S. 619) as a result of the constitutional error.  *Inthavong v. LaMarque*, 420

7   F.3d 1055, 1059 (9th Cir. 2005) (decision of the state appellate court that any error in the

8   admission of petitioner's confession in his murder trial was harmless beyond a reasonable doubt

9   was objectively reasonable); *see also Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003) (when a

10  state court determines that a constitutional error is harmless, a federal court may not award

11  habeas relief under section 2254 unless the harmlessness determination itself was unreasonable).

12          In this case, the decision of the California Court of Appeal was a reasonable

13  application of the *Chapman* standard.  As the state court explained, evidence of petitioner's guilt

14  was substantial.  Inside petitioner's apartment, police recovered tools stolen from Merrill's

15  Nissan Sentra as well as personal items stolen from the home of Pinon and Jedrzynski.  These

16  items included a Dell computer, a flat screen monitor, and a shredder.  (Reporter's Transcript

17  ("RT") at 1246-49.)  Petitioner admitted both his own participation and Villeda's participation in

18  the offenses when he stated to Detective Walstad that Villeda "told me to do everything." (RT at

19  1294-95.)  Petitioner further indicated to Detective Walstad that property removed from the

20  victims' home included $1500, a computer, telephone, jewelry, and digital cameras, and that

21  Villeda had hit the male victim three times with a "file" from a knife block.  (RT at 1295-96.)  As

22  the state court observed, only someone present during the robbery would have known this

23  information.

24          Given the substantial independent evidence of petitioner's guilt which included

25  his own admissions, the state court reasonably determined that admission of information

26  regarding Villeda's guilty pleas was harmless beyond a reasonable doubt.  By the same

1    reasoning, any constitutional error involved in admitting the information regarding Villeda's

2    pleas did not have substantial and injurious effect or influence in determining the jury's verdict.

3         Petitioner's additional contention that admission of Villeda's plea information

4    removed an element of the conspiracy charges (namely, whether a member of the conspiracy

5    committed the target crimes and the crimes as natural and probable consequences of the

6    conspiracy) from the jury's determination is also without merit.  The jury was free to accept or

7    reject the evidence regarding Villeda's guilty pleas as proof of Villeda's involvement in a

8    conspiracy with petitioner.  Moreover, petitioner's own statement to Detective Walstad that

9    Villeda "told me to do everything" was admitted into evidence, thus implicating Villeda in the

10   crimes.  Although the record evidence gave rise to a strong inference that Villeda was involved,

11   nothing was removed from the jury's determination.  Petitioner is not entitled to relief for his

12   allegation that the trial court erroneously took judicial notice of Villeda's guilty pleas.

13         2.    Magana-Torres's Redacted Statement

14              a.    Additional background[3]

15         Prior to trial, in accordance with *Bruton v. United States* 391 U.S. 123 (1968)[4] and

16   *People v. Aranda*, 63 Cal.2d 518 (1965),[5] the trial court decided that each defendant's statement

17   to Detective Walstad must be redacted so as not to implicate the other defendant.  Each

18   defendant objected to admission of the other's out-of-court statements under *Aranda/Bruton* and

19   *Crawford.*

20

21         [3] *People v. Gomez Perez et al.*, *supra*, slip op. at 10-11.

22         [4] In *Bruton v. United States*, the Supreme Court held that admission of a confession
     implicating a co-defendant in a joint trial constitutes prejudicial error even where the trial court
23   clearly instructed that the confession could only be used against the confessing defendant.  391
     U.S. 123 (1968).
24
         [5] Likewise, in *People v. Aranda*, the California Supreme Court held that admission of a
25   confession implicating a co-defendant in a joint trial results in miscarriage of justice
     notwithstanding a limiting instruction that the confession was admissible only against confessing
26   defendant.  63 Cal.2d 518 (1965).

1       Defense counsel also requested guidance about the scope of Detective Walstad's

2   cross-examination.  The trial court warned counsel to be careful, because "if you ask a question

3   that elicits some references to a co-participant, you can run into some problems," by inviting

4   *Aranda/Bruton* error, which the court would not permit.  Petitioner's attorney made an offer of

5   proof as to the scope of proposed cross-examination, indicating that he sought to ask the

6   detective what petitioner said about (1) who took the property, (2) who engaged in what behavior

7   inside the victims' residence, and (3) who drove up to and left the residence, but the court ruled

8   that redaction was the appropriate remedy.  The court offered to allow defendants full cross-

9   examination of Detective Walstad if they waived their *Aranda/Bruton* rights, but neither was

10  willing to do so.  Both defense attorneys then agreed to limit the scope of their cross-

11  examination.  Walstad testified as to each defendant's statement, in redacted form.  Before

12  deliberations, the jury was instructed to consider each statement only against the speaker and not

13  against the other defendant.

14              b.  Analysis

15      Petitioner claims that admission of co-defendant Magana-Torres's redacted

16  statement violated his rights under *Aranda/Bruton*.  Petitioner complains in particular that the

17  prosecution linked Magana-Torres's statement to Villeda's guilty plea, which "obviated the

18  slender protection offered by the redactions."  Petitioner further contends that the trial court

19  improperly restricted his cross-examination of Detective Walstad by ruling that no references to a

20  co-participant could be elicited.

21      In *Bruton v. United States*, a witness testified at trial that the co-defendant had

22  confessed he and the defendant committed the crime.  391 U.S. 123, 124 (1968).  The Supreme

23  Court held that a trial court violates the Sixth Amendment right of confrontation by admitting a

24  facially incriminating confession of a non-testifying co-defendant at a joint trial, even if the court

25  instructs the jury to consider the confession only against the co-defendant.  *Id*. at 135-37.  The

26  *Bruton* court reasoned that, despite the trial court's clear limiting instructions, a substantial risk

existed that the jury would still consider the incriminating statement against the defendant.  *Id*. at 131.  In *Gray v. Maryland*, the Supreme Court clarified that the substitution of the defendant's name with a neutral pronoun or a symbol is inadequate if it is obvious that the alteration is used to protect the identity of a particular individual.  523 U.S. 185, 196 (1998).

In *Richardson v. Marsh*, the Supreme Court limited the scope of the *Bruton* rule. *Richardson*, 481 U.S. 200 (1987).  The *Richardson* court held, "the Confrontation Clause is not violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction when... the confession is redacted to eliminate not only the defendant's name but any reference to his or her existence."  *Id*. at 211.  The *Richardson* court noted that the confession in *Bruton* "'expressly implicat[ed]' the defendant" while the confession in *Richardson* "was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendants own testimony)."  *Id*. at 208.  *Bruton's* rule is limited to instances where the admitted statement is "powerfully incriminating" against the defendant himself such that the jury is presumed unable to follow limiting instructions directing it to consider the statement only against the non-testifying co-defendant.  *Id*.

Thus, no constitutional violation occurs where a co-defendant's statement is not incriminating on its face, and becomes so only when linked to other admitted evidence, if the trial court gives a proper limiting instruction.  *Richardson*, 481 U.S. at 208, 211; *Mason v. Yarborough*, 447 F.3d 693, 695 (9th Cir. 2006) (*Richardson* "specifically exempts a statement, not incriminating on its face, that implicates the defendant only in connection to other admitted evidence"); *United States v. Hoac*, 990 F.2d 1099, 1105 (9th Cir. 1993) ("a co-defendant's statement that does not incriminate the defendant unless linked with other evidence introduced at trial does not violate the defendant's Sixth Amendment rights").

On direct appeal, the California Court of Appeal held that admission of co-defendant Magana-Torres's statement was not *Aranda/Bruton* error, and that even if it were, it was harmless:

A trial court does not commit *Aranda/Bruton* error if the nontestifying codefendant's statement is redacted to eliminate not only the other defendant's name but also any reference to his existence, and the jury is given a proper limiting instruction not to use the codefendant's statement against him.  (*Richardson v. Marsh* (1987) 481 U.S. 200, 208-211; *People v. Orozco* (1993) 20 Cal. App.4th 1554, 1564.)  That is exactly what occurred here.

Each defendant's claim that the trial court committed *Crawford* error in admitting the statement of the other defendant fares no better.  In *Richardson*, *supra*, 481 U.S. at p. 211, the United States Supreme Court held that introduction of the statement of a codefendant that (1) does not facially incriminate the defendant and (2) is qualified by a proper limiting instruction, does not violate the defendant's constitutional right of confrontation.  *Crawford* precludes the introduction of out-of-court testimonial statements admitted *against the defendant* unless the witness is unavailable and the defendant previously had an opportunity for meaningful cross-examination.  The case was not concerned with a situation such as the one here, where the jurors are instructed they *must not* consider the extrajudicial statement of one defendant against the other defendant.  In short, nothing in *Crawford* suggests a retraction of *Richardson*.

For similar reasons, the evidence was harmless beyond a reasonable doubt.  The statement of each defendant was redacted to eliminate any reference to the other defendant and the jury was told to consider it only against the declarant.  We presume the jury followed this admonition.  Accordingly, each codefendant's statement which accused Villeda of masterminding the robbery but contained no reference to anyone else, could not possibly have affected the jury's verdict as to the nonspeaker.

Defendant's complaint about the trial court's restriction on Detective Walstad's cross-examination fails because they have not demonstrated how a more robust cross-examination could have aided them.  Gomez-Perez's offer of proof did not contain questions pertaining to Walstad's credibiltity.  Instead, the line of questioning would have had the inevitable effect of implicating codefendant Magana-Torres, yet neither defendant was willing to waive his *Aranda/Bruton* rights.  The trial court was not compelled to allow defendants to invite error in this manner.  Although the right of confrontation includes the right to cross-examine adverse witnesses on matters reflecting their credibility, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination.  In particular, notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352.  A trial court's limitation on cross-examination pertaining to the credibility of a witness does not violate the confrontation clause unless a reasonable jury might

have received a significantly different impression of the witness's
credibility had the excluded cross-examination been permitted.
(*People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.)
Defendants have made no such showing.

*People v. Gomez Perez et al.*, *supra*, slip op. at 12-14 (citations omitted) (alterations in original).

The California Court of Appeal's resolution of petitioner's *Aranda/Bruton* claim is not contrary to, or an unreasonable application of clearly established federal law.  Detective Walstad's testimony at trial as to co-defendant Magana-Torres's redacted statement was as follows:

| | |
|---|---|
| [Walstad]: | [W]e spoke to Mr. Magana-Torres. |
| [Prosecutor]: | And where did you speak to Mr. Magana-Torres? |
| [Walstad]: | In Room Number 513 at the Placer County Jail. |
| [Prosecutor]: | And that's an interview room? |
| [Walstad]: | Yes, it is. |
| [Prosecutor]: | And did you tape record or videotape this conversation that took place in Room 513 of the Placer County Jail? |
| [Walstad]: | I did not. |
| [Prosecutor]: | Did you have anything with you that you wanted to show to Mr. Magana-Torres when you – |
| [Walstad]: | I did. |
| [Prosecutor]: | – when you went there on the 7th of June? |
| [Walstad]: | I did. |
| [Prosecutor]: | Showing you what's been marked as 130 for identification.  Do you recognize what's depicted there, sir? |
| [Walstad]: | I do. |
| [Prosecutor]: | And would you identify that for the jury, please. |
| [Walstad]: | This is a photograph of Mr. Heiner Villeda.  And this is a photograph that I showed to Mr. Magana-Torres. |

| | |
|---|---|
| [Prosecutor]: | Now, we've heard testimony yesterday that Ms. Adams assisted you by translating? |
| The Court: | We're getting some feedback somewhere.  Go ahead. |
| [Prosecutor]: | Ms. Adams indicated yesterday that she assisted you in advising Mr. Magana-Torres of his rights to remain silent and have counsel present. |
| [Walstad]: | She did. |
| [Prosecutor]: | And did she indicate to you whether Mr. Magana-Torres agreed to talk to you understanding those rights? |
| [Walstad]: | He did agree to talk to me. |
| [Prosecutor]: | Did you show the photograph that you have shown, I think which is marked as 130, to Mr. Magana-Torres? |
| [Walstad]: | I did. |
| [Prosecutor]: | What, if anything, did you ask Mr. Magana-Torres when you showed him that photograph? |
| [Walstad]: | I asked him if he knew the person in the photograph. |
| [Prosecutor]: | And did Mr. Magana-Torres indicate he knew the person in the photograph? |
| [Walstad]: | Yes, he did. |
| [Prosecutor]: | Did Mr. Magana-Torres identify the person in the photograph? |
| [Walstad]: | He said, "The person was Heiner." |
| [Prosecutor]: | And did he say anything else about the person in the photograph who he identified as Heiner at that time? |
| [Walstad]: | Yes, he did. |
| [Prosecutor]: | What did [he] say? |
| [Walstad]: | He said that "He is Heiner.  He's the person who did everything." |
| [Prosecutor]: | Did Mr. Magana-Torres say anything else to you at that point? |

16

[Walstad]:        Yes, he did.

[Prosecutor]:     What did he tell you?
[Walstad]:        He told me that he was still willing to help me in any
                  way that he can.

[Prosecutor]:     Did that conclude your discussion with Mr. Magana-
                  Torres on the 7th of June, 2004?

[Walstad]:        Yes, sir.

(RT at 1292-93.)

Nothing in Magana-Torres's redacted statement incriminated petitioner.  Rather,

petitioner was incriminated only upon consideration of independent evidence, including his

possession of various property belonging to the victims and his own statements to Detective

Walstad.  Importantly, the court explained that each defendant's statement was admitted for a

limited purpose only.  After Detective Walstad's testimony, and before the close of evidence, the

court explained to the jury that

> during the trial there was admitted statements given by the
> defendants after their arrest from each of them [sic].  They were
> brief statements.  Those statements may be used only as to the
> crimes charged against the speaker.  You cannot use one statement
> against the other defendant.  They're not cross-admissible.  They're
> only admitted as to the speaker in terms of that person's case.

(RT at 1430.)  Later, during jury instructions, the court gave a sufficient limiting instruction:

> During trial certain evidence was admitted for a limited purpose.
> You may consider that evidence only for that limited purpose and
> no other.
>
> ...
>
> You've heard evidence that the defendant, Jose Magana-Torres,
> made a statement out of court.  You may consider that evidence
> only against him, and not any other defendant.

(RT at 1464.)

Finally, the state court's additional finding that any error was harmless is a

reasonable application of the harmless error standard.  *See Lilly*, 527 U.S. at 139-40 (claim of

17

1    *Bruton* error, as with any other claim under the Confrontation Clause, is subject to harmless error

2    review).  As already discussed, there was sufficient compelling independent evidence against

3    petitioner.  For this same reason, admission of Magana-Torres's statement, which was not facially

4    incriminating towards petitioner, did not have a substantial and injurious effect or influence in

5    determining the jury's verdict.  *Brecht*, 507 U.S. at 638.

6            B.      Flight Instruction

7                    a.      Additional Background[6]

8            The prosecution presented evidence that defendants invaded the home of Pinon and

9    Jedrzynski, stole their car and other valuables and then left, after starting several fires inside the

10   home.  Over defendants' objection, the trial court gave a standard flight instruction (CALCRIM

11   No. 372).  As given to the jury, CALCRIM No. 372 stated:

12           If a defendant fled immediately after the crime was committed, that
             conduct may show that he was aware of his guilt.  If you conclude
13           that a defendant fled, it is up to you to decide the meaning and
             importance of that conduct.  However, evidence that the defendant
14           fled cannot prove guilt by itself.

15   (RT at 1466.)

16                   b.      Analysis

17           Petitioner claims that the flight instruction was erroneously given because there

18   was no evidence of police pursuit and because evidence at trial demonstrated "only that

19   defendants were arrested in Sacramento Couny, where appellate Gomez-Perez lived."  Petitioner

20   argues that mere return home from a crime scene is not flight.

21           The California Court of Appeal rejected this claim on direct appeal, holding:

22           CALCRIM No. 372 properly states the law.  The instruction leaves
             the appropriate characterization of defendants' conduct to the jury's
23           determination and outlined the permissible inferences that could be
             drawn from it.  It does not direct that a particular inference be
24           drawn.  The mere fact that innocent inferences could also be drawn
             from defendants' flight does not, as defendants suggest, render the

25

26           [6] *People v. Gomez Perez et al.*, *supra*, slip op. at 14-15.

                                                    18

1     instruction improper.

2   *People v. Gomez Perez et al.*, *supra*, slip op. at 15.

3          The state court's resolution of this claim is not contrary to, or an unreasonable

4   application of clearly established federal law, nor based on an unreasonable determination of the

5   facts in light of the evidence.

6          A claim of instructional error is cognizable on federal habeas corpus only if it "so

7   infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*,

8   502 U.S. at 72; *see also Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Nauhten*, 414

9   U.S. 141, 146-47 (1973). It is not enough to show that the instruction was "undesirable,

10  erroneous, or even universally condemned," but rather, it must have actually rendered the trial

11  fundamentally unfair. *Estelle*, 502 U.S. at 72. The challenged instruction "may not be judged in

12  artificial isolation, but must be considered in the context of the instructions as a whole and the

13  trial record." *Id*. A due process violation results only if there is a reasonable likelihood that the

14  jury misapplied the challenged instruction in a manner that violates the Constitution. *Id*. (citing

15  *Boyde v. California*, 494 U.S. 370, 380 (1990)); *see also Middleton v. McNeil*, 541 U.S. 433, 437

16  (2004) (applying standard to uphold erroneous instruction).

17         In addition, on federal habeas corpus review, no relief can be granted without a

18  showing that the instructional error had a "substantial and injurious effect of influence in

19  determining the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (citing *Brecht*,

20  507 U.S. at 637); *Bains v. Cambra*, 204 F.3d 964, 971 n. 2 (9th Cir. 2000) (habeas relief is

21  unwarranted unless "it is reasonably probable that a result more favorable to the appealing party

22  would have been reached in the absence of the error") (internal quotation omitted).

23         In this case, the challenged instruction was not inaccurate or erroneous; at worst, it

24  was potentially inapplicable if the jury did not believe that petitioner had fled from the scene of

25  the crimes. There was, however, evidence that defendants stole valuables from the home of Pinon

26  and Jedrzynski, after which they started multiple fires inside the home and then left the scene in a

1  stolen car.  This was sufficient evidence to warrant a flight instruction.  *See Delgado v. Yates*, 622

2  F.Supp.2d 854, 859-60 (N.D. Cal. 2008).  Petitioner simply chooses to overlook the fact that

3  consciousness of guilt and a purpose to avoid arrest for the offenses he committed could rationally

4  be inferred from evidence that he left the scene immediately after the crimes were committed.

5  Moreover, because the jury was explicitly instructed that evidence of flight is not

6  sufficient alone to prove guilt, and because other substantial evidence demonstrated petitioner's

7  guilt, he cannot show that the instruction was applied in a manner that violated his constitutional

8  rights.  *See Delgado*, 622 F.Supp.2d at 860 ("Even if the trial court's instruction on flight

9  amounted to constitutional error, it cannot be said that the error had a substantial or injurious

10  effect on the jury's verdict.  The instruction specifically cautioned the jury not to infer petitioner's

11  guilt from flight alone.  The jury necessarily had to rely on other evidence against petitioner in

12  order to find petitioner guilty.") (citation omitted)).

13  For these reasons, the state court's determination that the instruction was properly

14  given is not contrary to, or an unreasonable application of clearly established federal law.

15  C.    Clarification of Instructions on Premeditation and Deliberation

16  a.    Additional Background[7]

17  Before sending the case to the jury, the trial court instructed on conspiracy to

18  commit murder (CALCRIM 563), attempted murder (CALCRIM 600), and malice aforethought

19  (CALCRIM 520).  The court also instructed on premeditation and deliberation in the language of

20  CALCRIM 601 as follows:

21        If you find the defendant guilty of attempted murder under Counts
        Fourteen and Fifteen, you must then decide whether the People have
22        proved the additional allegation that the attempted murder was done
        with deliberation and premeditation.

23
        The defendants deliberated if they carefully weighed the
24        considerations for and against their choice and knowing the
        consequences of deciding to kill.  The defendants premeditated if

25

26        [7] *People v. Gomez Perez et al.*, *supra*, slip op. at 16-17.

1    they decided to kill before acting.

2    The length of time the person spends considering whether to kill
     does not alone determine whether the attempted killing is deliberate
3    and premeditated.  The amount of time required for deliberation and
     premeditation may vary from person to person and according to the
4    circumstances.  A decision to kill made rashly, impulsively, or
     without careful consideration of the choice and its consequences is
5    not deliberate and premeditated.

6    On the other hand, a cold, calculated decision to kill can be reached
     quickly.  The test is the extent of the reflection and not the length of
7    time.  The People have the burden of proving this allegation beyond
     a reasonable doubt.  If the People have not met this burden, you
8    must find this allegation has not been proved.

9    (RT at 1492-93.)

10           After three days of deliberation, the jury foreperson informed the court that the

11   jurors were "stuck" and desired further guidance on "premeditation and deliberation" as applied to

12   the facts of the case.  The foreperson also indicated that further argument by the attorneys on the

13   issue might be helpful.  Over the objections of defense counsel, the court decided to allow the

14   reopening of attorney argument on the issue.  The court also decided to reread instructions on

15   direct and circumstantial evidence using CALCRIM Nos. 223, 224 and 225, to reread CALCRIM

16   No. 601, and to give the jury a special instruction on premeditation based on *People v. Anderson*

17   (1968) 70 Cal.2d 15 (*Anderson*).  Defendants had no objection to the rereading of standard

18   instructions, they did, however, object to the reopening of arguments and to the special instruction

19   based on *Anderson*.

20           Petitioner contends here that the trial court failing to adequately "clarify" the

21   instructions on premeditation and deliberation and failed to inquire into the reason for the jury's

22   confusion about these concepts.

23           b.      Analysis

24           On direct appeal, the California Court of Appeal held that this claim was

25   procedurally barred:

26   /////

21

> This contention has been forfeited because defendants did not propose further clarification.  "'A party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language.'" (*People v. Hart* (1999) 20 Cal.4th 546, 622, citing *People v. Lang* (1989) 49 Cal.3d 991, 1024; accord, *People v. Bohana* (2000) 84 Cal.App.4th 360, 373.)  Indeed, since Gomez-Perez does not say what "clarification" the court erroneously failed to give, we can fairly say the point has been doubly forfeited.

(*People v. Gomez Perez et al.*, *supra*, slip op. at 20.)

Accordingly, respondent asserts that the claim is procedurally barred in this court. As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'"  *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).  An exception to the general rule exists if the prisoner can demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.

Respondent bears the ultimate burden of proving adequacy of a state procedural bar.  *See Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir. 2003).  Here, it is apparent that the procedural bar at issue, one applied for failure to request appropriate clarifying or amplifying instructions, is independent of federal law.  In addition, respondent has demonstrated that it appears to be applied in the vast majority of cases.  *See*, *e.g.*, *People v. Guerra*, 37 Cal.4th 1067, 1134 (2006); *People v. Hillhouse*, 27 Cal.4th 469, 503 (2002); *People v. Samaniego*, 172 Cal.App.4th 1148, 1163 (2009); *People v. Campos*, 156 Cal.App.4th 1228, 1236 (2007).  Federal review of this claim appears to be barred.

Even if the claim were not procedurally barred, however, its merits would not warrant relief.  "When a jury makes explicit its difficulties a trial judge should clear them away

1   with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946); *see also*

2   *Weeks v. Angelone*, 528 U.S. 225 (2000). In *Bollenbach*, the trial judge gave, in response to a jury

3   question, a cursory supplemental instruction later characterized on review as "mistaken" and

4   "simply wrong." *Id*. at 611, 613. *Bollenbach* was narrowly decided on specific facts: the jury's

5   question had "clearly indicated that the[y] were confused," and they received a cursory *and*

6   inaccurate response, along with "a plain hint from the judge that a verdict ought to be

7   forthcoming." *Id*. at 612-13. The jury returned only five minutes later with a verdict of guilty.

8   *Id*. at 610. The Supreme Court held that where a supplemental instruction "is a specific ruling on

9   a vital issue *and* misleading, the error is not cured by a prior unexceptional and unilluminating

10   abstract charge." *Id*. at 612 (emphasis added).

11         Generally, however, a jury is presumed to understand a judge's answer to a

12   question. *Weeks*, 528 U.S. at 234. In *Weeks*, the United States Supreme Court "noted that the

13   original instruction was correct and that the judge directed the jury to the precise paragraph that

14   answered the question clearly. This was sufficient to pass constitutional muster..." *Beardslee v.*

15   *Woodford*, 358 F.3d 560, 574-75 (9th Cir. 2004) (citing *Weeks*, 528 U.S. at 234); *but see United*

16   *States v. Frega*, 179 F.3d 793, 808-11 (9th Cir. 1999) (trial judge's confusing response to jury's

17   questions raised possibility that verdict was based on conduct legally inadequate to support

18   conviction).

19         Here, in response to the jury's question, the trial court reread several instructions,

20   including CALCRIM No. 601 on deliberation and premeditation in the context of attempted

21   murder. In addition, the court gave a special instruction that focused the jurors on some of the

22   factors they might wish to consider when deciding whether the killing was premeditated. The

23   court further allowed additional argument by the attorneys to specifically address the jury's

24   concerns. Petitioner fails to demonstrate that this approach violated his right to due process of

25   law. First, there is no indication that the jury applied any of the instructions in an unconstitutional

26   manner. Moreover, because there was nothing inaccurate or plainly confusing in the trial court's

response, it is presumed that the jury understood and followed the instructions given. *See generally Greer v. Miller*, 483 U.S. 756, 766 (1987); *Weeks*, 528 U.S. at 234. Petitioner's assertion that the jury was possibly still confused following the trial court's response is speculative and will not suffice for habeas corpus relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations lacking in factual support do not provide a sufficient basis for habeas corpus relief). For all these reasons, petitioner is not entitled to relief for this claim.

D.     Upper Term Selection

a.     Additional Background

At sentencing, the trial court sentenced each defendant to the upper term for the home invasion robbery count. The judge stated:

> Turning now to the independent determinate terms, for Count Five, violation of Penal Code Section 211/213 [, subdivision] (a)(1)(A), [defendants are] sentenced to the upper term of nine years, and that shall run consecutive[ly] to the indeterminate terms imposed. The court has selected the upper term because the balance of the counts that will be sentenced are going to be run concurrent[ly] when the court has the option of running them consecutive[ly]. For that reason, it justifies the imposition of the upper term.

(RT at 1746.)

Petitioner claims that imposition of this upper term sentence violates the United States Supreme Court's holding in *Cunningham v. California*, 549 U.S. 270 (2007). Petitioner further asserts that the upper term was improperly imposed because he exercised his constitutional right to a jury trial.

b.     Analysis

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury; this right is applicable to state criminal proceedings through the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 149-150 (1968). In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court clarified a defendant's rights under the Sixth Amendment by extending the right to trial by jury to any fact finding used to make

24

enhanced sentencing determinations above the statutory maximum for an offense: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 488-90. [T]he statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. *Blakely v. Washington*, 542 U.S. 296, 303 (2005).

In *Cunningham v. California*, the United States Supreme Court, citing *Apprendi*, *Blakely*, and *United States v. Booker* (543 U.S. 220 (2005)), held that California's determinate sentencing law violated a criminal defendant's right to jury trial to the extent it permitted a trial court to impose an upper term based on facts found by the court rather than the jury. *Cunningham*, 549 U.S. 270 (2007). Here, petitioner was sentenced on June 19, 2007, *after* California's amended sentencing statute took effect on March 30, 2007. Accordingly, the California Court of Appeal rejected petitioner's claim of *Cunningham* error on direct appeal:

> In *Cunningham*, the United States Supreme Court held that under California's determinate sentencing law, the middle term is the statutory maximum that a judge may impose solely based on the facts either reflected in the jury verdict or admitted by the defendant. Thus, except for a prior conviction, any fact that increases the penalty for a crime beyond the middle term must be tried to the jury and proved beyond a reasonable doubt. (*Cunningham*, *supra*, 549 U.S. at p. 281.)
>
> As this court stated in People v. Wilson (2008) 164 Cal. App.4th 988, 992: "The California Legislature quickly responded to the Cunningham decision. Senate Bill No. 40 (2007-200 Reg. Sess.) (Senate Bill 40) amended section 1170 in response to Cunningham's suggestion that California could comply with the federal jury-trial constitutional guarantee while still retaining determinate sentencing, by allowing trial judges broad discretion in selecting a term within a statutory range, thereby eliminating the requirement of a judge-found factual finding to impose an upper term. (Cunningham, supra; see Stats. 2007, ch. 3, § 1.) Senate Bill 40 amended section 1170 so that (1) the middle term is no longer the presumptive term absent aggravating or mitigating facts found by the trial judge; and (2) a trial judge has the discretion to impose an upper, middle or lower term based on reasons he or she states. As amended, section 1170 now provides as pertinent: 'When a judgement of imprisonment is to be imposed and the statute

1       specifies three possible terms, the choice of the appropriate term
shall rest within the sound discretion of the court . ... The court shall
2       select the term which, in the court's discretion, best serves the
interests of justice.  The court shall set forth on the record the
3       reasons for imposing the term selected. ...' (§ 1170, subd. (b).)  This
amended version of section 1170 became effective on March 30,
4       2007.  (States. 2007, ch. 3, § 2.)"

5       Since the court sentenced defendants on June 19, 2007, the new law
applied.  Under section 1170 in its revised form, the court's
6       selection of the upper term did not involve judicial fact-finding, but
rather the sound exercise of its traditional sentencing discretion.
7       Thus defendants' federal constitutional rights under *Cunningham*
were not violated.  (*People v. Wilson*, *supra*, 164 Cal.App.4th at p.
8       992.)

9 (*People v. Gomez Perez et al.*, *supra*, slip op. at 24-25.)

10         The California Court of Appeal's rejection of this claim reasonably applies the

11 relevant clearly established federal law.  *See Booker*, 543 U.S. at 233 ("For when a trial judge

12 exercises his discretion to select a specific sentence within a defined range, the defendant has no

13 right to a jury determination of the facts that the judge deems relevant."); *Butler v. Curry*, 528

14 F.3d 624, 652 n.20 (9th Cir. 2008) (under the new [California determinate sentencing] law,

15 "imposition of the lower, middle, or upper term is now discretionary and does not depend on the

16 finding of any aggravating factors").

17         The California Court of Appeal further held that the trial court had not improperly

18 imposed the upper term because petitioner had elected to proceed to trial rather than pleading

19 guilty:

20       This argument is based on comments the judge made before
pronouncing sentence.  After noting that codefendant Villeda had
21       accepted a plea bargain of 24 years to life, the judge stated, "I also
recognize that if you go to trial you take risks, and one of those risks
22       is that you get convicted of a lot more than ... what you would have
ultimately been convicted if you entered a plea, so that's going into
23       the mix."  A short time later, the court said, "Obviously your [the
prosecutor's] office made an evaluation of Mr. Villeda and these
24       defendants and offered a 24-year-to-life term.  I'm more than
doubling that as a consequence of their going to trial.  *Not punishing*
25       *them because they went to trial* but taking into account the jury's
verdict."  (Italics added.)

26

It is well settled that punishing a defendant for exercising a constitutional right is "'a due process violation of the most basic sort.'" (*In re Lewallen* (1979) 23 Cal.3d 274, 278, quoting *Bordenkircher v. Hayes* (1978) 434 U.S. 357, 363.)  The judge's comments did not violate this precept, for several reasons.

First, the comments were not included in the court's statement of reasons for pronouncing sentence.  Second, the court stated on the record that its sentence was *not* being imposed as punishment for defendants' decision to go to trial, also noting that "just because a person goes to trial does not mean it warrants piling on sentence after sentence."  Third, when it did pronounce sentence the court relied on a single, perfectly valid reason for imposing the upper term for the home invasion robbery: the imposition of concurrent as opposed to consecutive terms for the other offenses.  Under rule 4.421(a)(7) a court may consider, as an aggravating circumstance, whether "[t]he defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed."  Given these jury verdicts, defendants could easily have been sentenced to hundreds of years in prison.  The sentence they received was mild, considering the horrific nature of their crimes.

Considering all of the circumstances, we conclude that the upper term sentence for robbery was not based, either in whole or in part, on defendants' decision to go [to] trial.

(*People v. Gomez Perez et al.*, *supra*, slip op. at 25-26.)

A criminal defendant may not be punished because in good faith he defends himself when charged with crime, even though his effort proves unsuccessful.  *See generally United States v. Stockwell*, 472 F.2d 1186, 1187 (9th Cir. 1973.)  That a "sentence imposed after trial is more severe than one the judge would have been willing to impose as part of a plea bargain does not, however, impeach the legitimacy of the sentence."  *McKenzie v. Risley*, 842 F.2d 1525, 1537 (9th Cir. 1988).

In this case, the trial court observed that Villeda was "equally responsible" as petitioner and Magana-Torres although he received a much lesser sentence of twenty-four years to life.  (RT at 1736-37.)  The court appeared to make an expression of concern that it was imposing a much more severe sentence than Villeda received, and clarified that the increased sentence was not punishment for proceeding to trial, but rather, that the imposed sentence was reached by

"taking into account the jury's verdict."  (RT at 1737.)  The court explained its reasons for

imposing the chosen sentence and petitioner points to no evidence tending to show an alternative,

improper, basis for the sentence imposed.  The California Court of Appeal's decision that the

upper term sentence for robbery was not based, either in whole or in part, on petitioner's decision

to proceed to trial, is a reasonable determination of the facts in light of this record.

      E.     Stay of Sentences

      For his final claim, petitioner contends that the two terms for robbery imposed for

Counts 5 and 6 should have been stayed pursuant to section 654 of the California Penal Code,

because the robbery was part of the same course of conduct as the conspiracy to murder in Counts

12 and 13.

      As to this claim, the California Court of Appeal held:

> Section 654 states, in relevant part: "An act or omission that is
> punishable in different ways by different provisions of law shall be
> punished under the provision that provides for the longest potential
> term of imprisonment, but in no case shall the act or omission be
> punished under more than one provision."  (§ 654, subd. (a).)  "[I]t
> is well settled that section 654 applies not only where there was but
> one act in the ordinary sense, but also where there was a course of
> conduct which violated more than one statute but nevertheless
> constituted an indivisible transaction. [Citation.] Whether a course
> of conduct is indivisible depends on the intent and objective of the
> actor." (*People v. Perez* (1979) 23 Cal.3d 545, 551.)  Gomez-Perez
> avers that the trial court erred in sentencing him for both robbery
> and the murder conspiracy "because the conspiracy to murder was
> based on the objective of evading detection for the robbery."
>
> The murder attempt was committed as defendants were leaving the
> scene of the robbery.  Contrary to Gomez-Perez's assertion,
> defendants could have had a number of different motives for trying
> to kill the couple.  They may have done it to eliminate eyewitnesses,
> to destroy evidence, or out of gratuitous spite.  Whatever their
> motives, punishment for both crimes was not proscribed by section
> 654.  "A trial court's implied finding that a defendant harbored a
> separate intent and objective for each offense will be upheld on
> appeal if it is supported by substantial evidence." (*People v. Blake*
> (1998) 68 Cal.App.4th 509, 512.)  "'[A] separate act of violence
> against an unresisting victim or witness, whether gratuitous or to
> facilitate escape or to avoid prosecution, may be found not
> incidental to robbery for purposes of section 654.'" (*People v.
> Sandoval* (1994) 30 Cal.App.4th 1288, 1300, quoting *People v.*

1    *Nguyen* (1988) 204 Cal.App. 3d 181, 193.)  No error appears.

2    (*People v. Gomez Perez et al.*, *supra*, slip op. at 27-28.)

3        As previously discussed, a federal habeas corpus petitioner must assert a violation

4    of the Constitution, federal law, or treaties of the United States, in order to be entitled to relief.  28

5    U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68.  Petitioner's claim that the terms imposed for

6    robbery should have been stayed at sentencing under state law fails to allege a federal violation for

7    which relief can be granted.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("[A]

8    state court's interpretation of state law, including one announced on direct appeal of the

9    challenged conviction, binds a federal court sitting on habeas corpus."); *Menendez v. Terhune*,

10   422 F.3d 1012, 1029 (9th Cir. 2005).

11   VI.  CONCLUSION

12       Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that

13   the application for writ of habeas corpus be DENIED.

14       These findings and recommendations are submitted to the United States District

15   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

16   one days after being served with these findings and recommendations, any party may file written

17   objections with the court and serve a copy on all parties.  Such a document should be captioned

18   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

19   shall be served and filed within seven days after service of the objections.  Failure to file

20   objections within the specified time may waive the right to appeal the District Court's order.

21   *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

22   1991).

23   DATED: January 24, 2011

24                       *Charlene H. Sorrentino*
                 CHARLENE H. SORRENTINO

25                    UNITED STATES MAGISTRATE JUDGE

26